```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN REX                      :    CIVIL ACTION
                                :
      v.                        :
                                :
LEHIGH COUNTY PRISON, et al.    :    NO. 12-2002
```

MEMORANDUM

McLaughlin, J.                                      October 18, 2012

Steven Rex, the pro se plaintiff, filed a complaint against Lehigh County Prison and its warden, Dale A. Meisel, alleging inadequate medical care. The defendants have moved to dismiss on the ground that Lehigh County Prison is not a legal entity that can be sued and that there are no allegations that Warden Meisel was involved in any way in the plaintiff's medical treatment. The Court concluded that the complaint does fail to state a claim but because the prisoner is pro se, the Court held a series of telephone conferences on the record with Mr. Rex and counsel for the defendants to explore whether the plaintiff had additional facts that could make out a constitutional claim for inadequate medical care and whether the Court could facilitate the obtaining of medical treatment for the plaintiff. During this process, the plaintiff did receive additional medical treatment. After exploring the facts surrounding the plaintiff's medical complaints, the Court concludes that it would be futile

to allow the plaintiff to amend and, therefore, the Court dismisses the complaint with prejudice.

The complaint alleges that on July 8, 2011, a motorcycle fell on the plaintiff's leg fracturing his tibia and tearing the surrounding ligaments and tendons.  Thereafter, he was arrested for driving under the influence and taken to Sacred Heart Hospital for his injuries.  The plaintiff also alleges that Prime Care, Inc., the company that provides medical treatment within the prison, was unable to handle such a severe injury and scheduled him for medical services outside of the prison.  He alleges that the defendants denied him continuing medical treatment and therapy and that he has been permanently disabled as a result.

The Court first spoke with Mr. Rex and defense counsel on July 18, 2012.  Mr. Rex explained that his leg was put in a cast at Sacred Heart Hospital.  The essence of his complaint was that he was supposed to receive after-care treatment and physical therapy thereafter but did not.  He said that he had talked to representatives of Prime Care, who put his requests into the computer but he was never taken to physical therapy.  The Prime Care employee told him that the prison did not have transportation to take him to therapy.  Mr. Rex made clear that he did not want to sue Prime Care because they had done what they could.

Mr. Rex also complained that he never had an MRI to see if his leg had healed properly and that the prison had ordered Prime Care to crush the time-released psychotropic medication that he was taking. Mr. Rex was concerned that the time-released element was not effective because the medical was crushed.

Defense counsel asked whether Mr. Rex had put in a sick call request with respect to these issues and the plaintiff said that he had not done so. The Court also discussed with the parties whether Mr. Rex had put in a grievance about these matters. He said that he had, but had not received a response. The Court urged Mr. Rex to put in sick call requests for these issues and asked defense counsel to obtain Mr. Rex's records so we could further explore the medical facts. The Court scheduled a second telephone conference to follow up.

The second telephone conference was on August 23, 2012. Before the call, defense counsel had sent to the Court and the plaintiff a summary of the prison's medical records for the plaintiff. They reflected one session of physical therapy after which the plaintiff was supposed to perform certain exercises to see if he could strengthen his leg enough to walk without a cane. They also reflected that the plaintiff had not done his exercises. The plaintiff denied that he was given any exercises.

The plaintiff did report that, after the telephone conference with the Court, he put in a sick call request and was

taken for an x-ray and MRI.  He had not yet received the results of the MRI at that time.  With respect to the crushing of medication, defense counsel stated that although she did not see anything in the records about the crushing of Mr. Rex's medication, she did learn that the prison does crush medication at times to prevent hoarding.  Mr. Rex stated that he has been getting acid reflux since the prison started crushing the medication.  The Court urged Mr. Rex to put in a sick call request with respect to the acid reflux.  The Court then scheduled another telephone conference to learn the results of the MRI.

The third telephone conference occurred on September 27, 2012.  Mr. Rex stated that the prison was still crushing his medication but they had given him some medication for the acid reflux that had helped.  Mr. Rex had been told that the MRI did not show anything.  Defense counsel had read the results of the MRI which were that there was nothing other than a deformity of the proximal tibia, suspicious of an old healed fracture.  Mr. Rex reported that he had been sent out for a second physical therapy evaluation during which he was given an exercise program to increase strength in his leg.

The Court discussed with the plaintiff and defense counsel what the facts showed with respect to any claim for inadequate medical care.  The Court told the parties that it

appeared that the plaintiff's main complaint was that he did not receive proper treatment initially when he was treated right after his accident.  The plaintiff explained that he received the motorcycle injury and was arrested for driving under the influence.  The jail refused to accept him because he was injured and he was taken to Sacred Heart Hospital.  Mr. Rex complained that he learned at the time of his recent x-ray that his knee should have been plated and screwed to correct the problem.

   The Court will dismiss the case.  As it stands currently, Lehigh County Prison is the wrong defendant, and there are no allegations of any personal involvement by Warden Meisel in any of the conduct of which Mr. Rex complains.  The question for the Court is whether to allow an amendment of the complaint to add Lehigh County or Prime Care.  The Court concludes that there is no basis to add either of these entities.

   In order to bring a claim arising from medical care, the plaintiff must demonstrate conduct that amounts to deliberate indifference to a serious medical condition.  The standard established in <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) has two prongs: (1) deliberate indifference on the part of the prison officials; and (2) the prisoner's medical needs must be serious.  Here, we do have a serious medical need by Mr. Rex.

   The Court, however, does not see any way the plaintiff can state a claim for deliberate indifference on the part of the

5

prison officials.  There is no allegation that the prison had anything to do with the motorcycle accident.  Once the plaintiff was under the care of the prison, they took him to Sacred Heart Hospital, which is not run by the prison or Prime Care or any entity related to the prison.  Sacred Heart Hospital and its orthopaedic surgeons were in control of the situation at the time the plaintiff's knee was initially treated.

In addition, once the plaintiff filled out sick call requests, he was taken for an x-ray and MRI.  There is no allegation that at this point in time there is any treatment more appropriate than the exercises that he has been given.  There certainly does not appear to be any basis for deliberate indifference.  According to the plaintiff, Prime Care's representatives had been very responsive to his various requests. The Court, therefore, will dismiss the case with prejudice.

An appropriate order follows.